**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

**KAT CONSTRUCTION MANAGEMENT, LLC,** a Colorado limited liability company,

    Plaintiff,

v.

**LIBERTY INSURANCE CORPORATION**, an Illinois corporation,

    Defendant.

## COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff, KAT Construction Management, LLC ("Plaintiff"), by and through its attorneys, Furtado Law PC, and submits its Complaint and Jury Demand against the above-named Defendant Liberty Insurance Corporation, and states as follows:

### I. NATURE OF THE ACTION

1. Plaintiff brings this action by assignment seeking economic and non-economic damages related to Defendant's breach of two insurance contracts and statutory claims pursuant to C.R.S. §§10-3-1115 and 10-3-1116 arising from Defendant's unreasonable delay and denial of timely payment for insurance benefits including recoverable depreciation.

## II. PARTIES

2. KAT Construction Management, LLC ("Plaintiff") is a Colorado limited liability company with its principal place of business at 3541 South Hillcrest Drive, Denver, CO 80237. Plaintiff is the assignee of Richard Gardner's and Janice Gardner's insurance claims with Defendant. The only member of KAT Construction Management, LLC is Tina Weber. Upon information and belief, Ms. Weber resides at 7250 Eastmoor Drive, Apt. 206, Denver, CO 80237.

3. Upon information and belief, Liberty Insurance Corporation ("Defendant") is a registered Illinois corporation with its principal place of business located at Hoffman Estates, MA and conducts business in Colorado.

## III. JURISDICTION AND VENUE

4. Jurisdiction is asserted pursuant to 28 U.S.C. §1332 and 28 U.S.C. § 1391. The amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. Venue is proper because Defendant's insurance policy was purchased in Colorado and was intended to provide coverage for a property located in Colorado.

## IV. GENERAL ALLEGATIONS

5. Janice Gardner and Richard Gardner (the "Gardners") sought and obtained an insurance policy, Policy No. H37-291-206899-70 8 0 (hereinafter the "Policy"), from Defendant for their home located at 1753 East 142nd Avenue, Brighton, CO 80602 (hereinafter "the Property").

6. On or about June 18, 2018, a hailstorm hit the Gardner's Property causing property damage.

7. On or about August 24, 2018, the Gardners reported the loss to Defendant and Defendant issued the Gardners claim number 038074407-01. Defendant also assigned the claim to Rachelle Horn to adjust the claim. Defendant also assigned Phillip Thomas to inspect the property and to determine the amount of loss of the claim.

8. Upon information and belief, shortly after, the Gardners retained Plaintiff as their general contractor on the claim.

9. On or about September 4, 2018, Mr. Thomas inspected the property with Plaintiff.

10. Upon information and belief, during the inspection, Plaintiff explained to Mr. Thomas what building codes were required as part of the repairs. Upon information and belief, Mr. Thomas' words and actions and the time indicated to Plaintiff that he did not know relevant building codes when he saw the Property for the first time.

11. On or about September 5, 2018, Mr. Thomas drafted his first estimate of repairs with a replacement cost value of $16,505.93. Upon information and belief, the estimate did not reflect any of the discussions Mr. Thomas had with Plaintiff regarding applicable building codes.

12. Upon information and belief, Defendant's failure to add general contractor overhead and profit to its estimate is unreasonable because overhead and profit is generally payable on claims like this and Defendant has a written procedure that normally allows for overhead and profit on this kind of claim. Upon information and belief, Defendant has also paid general contractor overhead and profit on a claim this size where Plaintiff was the contractor

13. Upon information and belief, Defendant's failure to apply applicable building codes in its initial estimate is unreasonable because the codes are available online at the city and county government websites and the Gardners had ordinance and law coverage.

14. Upon information and belief, Mr. Thomas' behavior at the first inspection showing a lack of awareness or understanding regarding applicable building codes is unreasonable because Mr. Thomas had a non-delegable duty to investigate the claim.

15. Upon information and belief, from Plaintiff's experience working in the industry, insurers like Defendant do not properly train their adjusters to apply code coverage and in fact train their adjusters only to react to information received rather than proactively attempt to learn and apply code coverage at the outset of the claim. Mr. Thomas' conduct at the initial interview confirmed this known pattern and practice.

16. Upon information and belief, Colorado recently legislated that it is the duty of an insurer by law to get publicly available information relevant to the adjustment of an insurance claim.

17. On or about January 14, 2019, Plaintiff drafted an estimate of repairs with a replacement cost value of $62,210.34.

18. On or about January 14, 2019, Plaintiff sent supporting documentation its claim to Defendant for review and Defendant ignored the submissions in its estimate.

19. Upon information and belief, Defendant made no indication one way or another why it was denying the requests for additional coverage in violation of Colorado law.

20. On or about February 5, 2019, Defendant's adjuster Norman Bradenberg drafted his second estimate of repairs with a replacement cost value of $32,593.46.

21. Upon information and belief, the estimate shows that Defendant inaccurately determined that the Property had hardboard siding when in fact it was hardie board.

22. Upon information and belief, the second estimate's inclusion of siding detach and reset shows that its first estimate failed to account for basic things that were observable at the time. Upon information and belief, it is commonly known that the type of siding Plaintiff has is heavily damaged during the removal process for damaged siding.

23. The second estimate also included Ice and Water shield at 1,901.15 square feet. Upon information and belief, Defendant should have included this in their initial estimate as it was a code requirement. Upon information and belief, the calculation is also incorrect as 2,129.25 square feet of Ice and Water shield is required to complete this project.

24. Upon information and belief, the estimate also included masonry repairs even though Plaintiff pointed out this issue to Defendant during its initial inspection. Defendant's failure to include it when it knew it was damaged at the outset of the claim is unreasonable.

25. But-for Plaintiff's involvement, Defendant would have gotten away with incorrectly adjusting the claim on basic line items.

26. On or about September 4, 2019, Plaintiff completed repairs for the project.

27. On or about September 6, 2019, Plaintiff submitted its invoicing for completed repairs to Defendant.

28. On or about October 23, 2019, 47 days later, Defendant rejected the invoicing and supporting documentation and noted that Plaintiff's invoice for roofing contained items that were not required by code.

29. Upon information and belief, Defendant's email was in error and incorrect regarding code required items on the project.

30. Additionally, Defendant also explained that since the rooftop evaporative cooler was discarded, Defendant did not owe to dispose of it. Defendant also stated that Weber Remodeling's request to detach and reset were denied. Defendant also stated that Plaintiff's request for hvac work and duct work detach and reset was unwarranted because no permit was pulled. However, this denial shows a misunderstanding of Plaintiff's request. Plaintiff intended to do the detach and reset and was not hiring a separate company to do the work. Plaintiff also did not believe that a permit was required for either task separately.

31. Upon information and belief, Defendant's denial over general contractor overhead and profit given Defendant's admission that multiple trades were involved in evidence of unreasonable denial because Defendant has approved of such a payment on similar claims involving Plaintiff.

32. On or about October 1, 2019, the Gardners assigned their insurance claim to Plaintiff.

33. On or about October 23, 2019, Defendant's adjuster Leila-Brockus-Barnstein drafted her third estimate of repairs with a replacement cost value of $36,094.45.

34. Upon information and belief, this estimate is evidence that Defendant did receive Plaintiff's September documentation as the claim was adjusted further.

35. Although Plaintiff provided Defendant with the necessary documentation to recover covered benefits, Defendant has unreasonably delayed and denied Plaintiff's claim for benefits by failing to conduct a reasonable investigation of Plaintiff's damages and refusing to pay for covered benefits under the Policy.

36. As a consequence of Defendant's conduct in unreasonably delaying and denying Plaintiff's claim for benefits due and owing under the Policy, Plaintiff have incurred and continues to incur damages.

## V.   FIRST CLAIM FOR RELIEF
(*Breach of Contract*)

37. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

38. The Policy creates a contract of insurance.

39. By its actions, as described above, Defendant breached the contract of insurance by failing to pay all covered benefits due and owing under the Policy.

40. As a direct and proximate result of said breach, the Plaintiff is entitled to damages in an amount to be determined at trial.

## VI.   SECOND CLAIM FOR RELIEF
*(Violation of C.R.S. §10-3-1115 and Relief Pursuant to §10-3-1116)*

41. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

42. C.R.S. §10-3-1115 forbids an insurer from unreasonably delaying or denying payment of a claim for benefits owed to or on behalf of a first-party claimant.

43. Plaintiff is a first-party claimant under C.R.S. §10-3-1115.

44. Defendant has denied the Plaintiff's claim without a reasonable basis within the meaning of C.R.S. §10-3-1115.

45. C.R.S. §10-3-1116 provides that a first-party claimant whose claim has been unreasonably delayed by an insurer may bring an action in Colorado district court to recover reasonable attorneys' fees and court costs and two times the covered benefit.

46. Because of Defendant's actions, as described above, violate C.R.S. §10-3-1115, Plaintiff brings this claim to recover its reasonable attorneys' fees and court costs and two times the covered benefit, as allowed under C.R.S. §10-3-1116.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks that this Court enter judgment in its favor and against Defendant on its Claims for Relief as follows:

1. Damages for Defendant's breach of contract;
2. All unpaid covered benefits owed under the party;
3. Two times the amount of all covered benefits under the Policy;
4. Costs, expert witness fees, and attorneys' fees per statute incurred in prosecuting its claims;
5. Pre- and post-judgment interest; and
6. For such other and further relief as this Court may deem just.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS**

Respectfully submitted this 21st day of August 2019.

FURTADO LAW PC

*/s/ Nathanael Archuleta*
David Furtado, Esq.

Nathanael Archuleta, Esq.
Furtado Law PC
3773 Cherry Creek North Drive, Ste. 755
Denver, CO 80209
Telephone: (303) 755-2929
Email:      Dfurtado@furtadolaw.com
            Nathanael@furtadolaw.com
***Attorneys for Plaintiff***